**Stanley W. ROSENFIELD and the First National Bank and Trust Company of Oklahoma City, Trustees, Plaintiffs,**

v.

**KAY JEWELRY STORES, INC., Defendant.**

Civ. No. 65–75.

United States District Court
W. D. Oklahoma.

Aug. 11, 1966.

R. C. Jopling, Jr., and Fred Gipson, of Fowler, Rucks, Baker, Jopling, Gramlich & Mee, Oklahoma City, Okl., for plaintiffs.

Theodore M. Elam, of Mosteller, Andrews & Mosburg, Oklahoma City, Okl., for defendant.

OPINION

BOHANON, District Judge.

This action was instituted in this Court by the plaintiffs, Stanley W.

Rosenfield and The First National Bank & Trust Company of Oklahoma City, Trustees, as plaintiffs, against Kay Jewelry Stores, Inc., for the sum of $477,000, allegedly representing the purported unpaid rental to become due from the defendant tenant, Kay Jewelry Stores, Inc., to the plaintiffs as landlords and owners of the property hereinafter described.

The parties entered into a lease agreement dated September 2, 1962, for the property commonly referred to as 225–227 West Main Street, Oklahoma City, Oklahoma, and was for a term of fifteen years, commencing December 31, 1962, and ending December 31, 1977. There is no evidence which would indicate that the defendant did not pay the monthly rent in the amount of $3,000 promptly.

The defendant, Kay Jewelry Stores, Inc., was not the original tenant on the lease, the original tenant being Rosenfield Jewelry Company. Rosenfield Jewelry Company was liquidated in 1962 into the defendant, Kay Jewelry Stores, Inc., and the latter assumed and acquired all of the assets and liabilities of Rosenfield Jewelry Company, including the liability under the lease in question, but continued to do business as Rosenfield Jewelry Company, and continues to operate four other stores in Oklahoma City. For convenience, Kay Jewelry Stores, Inc., and Rosenfield Jewelry Company will hereinafter be collectively referred to as the tenant.

Pursuant to this lease, the tenant occupied the premises and began to fully perform its obligations under the lease.

On November 29, 1964, the premises were totally destroyed by fire, rendering the premises totally and completely untenantable.

At the time the lease agreement was originally executed, the parties had contemplated that a fire might totally destroy the premises, for the lease agreement itself specifically provided that:

"V. It is agreed that in the event the improvements on said premises are totally destroyed by fire, or other casualty, rendering the same untenantable during the term hereof then this lease shall cease and all liability of the parties hereunder shall end, unless First Parties, in their sole discretion, decide to rebuild the premises, then the tenancy shall continue, but Second Party shall not be liable for the rent herein provided for during the period from the date the total destruction of the premises occurs to the date the premises are tenantable within the meaning of this Lease Agreement. If the premises are only partially damaged or destroyed by such fire or other casualty, then at the option of First Parties said premises may be repaired or restored within a reasonable time and the tenancy shall continue, but Second Party shall not be liable during such period for the rental herein provided for in the event it is necessary by reason of such fire or other casualty to close said premises during the course of such repair."

During the months of December, 1964, and January and February, 1965, the premises remained completely untenantable, and no rebuilding or reconstruction was commenced by the landlord. During this period of time there was some preliminary discussions between the respective counsel for each of the parties to determine whether or not the tenant would be willing to pay the landlord any amount so the landlord could avoid rebuilding the destroyed premises. These discussions were not in any wise finalized, and no agreement was reached. There was no agreement or understanding, express or implied, that these negotiations would extend the time of the landlord's right to exercise the option to rebuild. In addition, during the three months following the fire, the landlord did obtain preliminary estimates from an architect and a contractor of the estimated cost and expense of rebuilding the destroyed building.

However, except as above mentioned, the landlord made no efforts to rebuild the destroyed premises, and during this time did not advise the tenant that it

did intend to rebuild the building. No contract was made with an architect for the drawing of plans for a new building, and there was no contract entered into for rebuilding. During the three months period between the date of the fire and February 25, 1965, the tenant was completely uninformed of the plans the landlord had to rebuild the destroyed premises, if in fact the landlord had such intention.

As late as February 25, 1965, the landlord notified the tenant, by letter, that it would be necessary for the tenant to either furnish financial statements or to place funds in escrow as security for the lease to enable the landlord to procure a loan commitment for funds with which to rebuild the destroyed building.[1]

On February 26, 1965, counsel for defendant advised the landlord, by let-

[1]. "February 25, 1965
Rosenfield Jewelry Company
1328 New York Avenue, N. W.
Washington 5, D. C.
Gentlemen:
Since my letter to you of December 15, we have kept you fully informed of the steady progress we have made in completing our plans for reconstruction of the Main Street premises through the conversations of our respective counsel.
In the course of their conversations which Mr. Rucks has reported to us and which I am certain Mr. Mosteller has reported to you, there has been casually discussed the economic soundness of such reconstruction from our point of view, and the desirability of terminating the lease from your point of view. Never at any time, however, was it intimated by us that we would not replace the structure nor was it ever intimated by you that you were not perfectly willing to abide by the provisions of the lease.
Accordingly, we were most shocked when yesterday, Mr. Rucks reported to us that Mr. Mosteller has at least intimated there was a contention on your part that we had not used diligence in replacing the structure and that you, therefore, did not feel bound further by the provisions of the lease.
On several occasions, Mr. Rucks has requested a financial statement from you which would obviously have been great help to us in negotiating the necessary loan to replace the structure. In this connection, it has been indicated through Mr. Mosteller that your financial structure was such that it might be that you would be able to finance the operation on Main Street no more than two or possibly three years. This intimation did not seriously disturb us because we could not believe that a parent corporation such as yours would permit its reputation to be sullied by the bankruptcy of one of its subsidiaries.
We recognize the possible desirability from your point of view of terminating this lease and at one time, Mr. Mosteller indicated that you would be willing to 'buy the rest of your term' for $75,000.00. To avoid any unpleasantness and permit us to immediately proceed with other use of the premises, we will accept said sum in full cancellation of all your obligations under said lease.
If it is not agreeable to you to pay us $75,000.00, then we believe that you should furnish a financial statement or place funds in escrow as security for the lease so we can complete the tentative loan commitment which we have now secured. We have always valued our pleasant relationship with Rosenfield Jewelry Company and we hope that this can be amicably worked out.
Yours very truly,
JHM:gh                               Vice President and Trust Officer

Air Mail
CC: Mr. L. Karlton Mosteller, Attorney
       Mosteller, Andrews & Mosburg
       United Founders Life Tower
       Oklahoma City, Oklahoma
. BC: Mr. Joseph G. Rucks, Attorney
       1133 First National Building
       Oklahoma City, Oklahoma

*    *    *    *    *    *    *    *    *    *    *    *    * *"

ter,[2] that because of the unreasonable lapse of time since the fire, with no overt effort to rebuild the building, coupled with the landlord's apparent financial inability to rebuild, the tenant in good faith contended that the entire lease agreement had terminated.

On March 5, 1965, this action was instituted, seeking to recover all of the future rentals under the original lease agreement.

Title 15 Okl.Stat. Sec. 173 provides: "If no time is specified for the performance of an act required to be

2. "February 26, 1965
Mr. John H. Miller
The First National Bank & Trust Company, Co-
    Trustee of the Anna Rosenfield Trust
Oklahoma City, Oklahoma

Re: *Rosenfield Jewelry Co.—222.3*

Dear Mr. Miller:
Your letter of February 25, 1965, to Rosenfield Jewelry Co. has been referred to us for reply.

At the outset, we, as well as our client, are unaware of any plans you may or may not have for reconstruction of the Main Street premises or of any progress you have made in completing such plans, if any. Our only information regarding your possible reconstruction of the Main Street building was recent oral advice from your counsel that you were seriously considering rebuilding.

You are, or should be, aware that due to the unreasonable time (three months) which has already elapsed since the fire with no positive evidence of your intention to reconstruct the premises, we contend that the lease has terminated because of your lack of diligence.

Although we can recall only one occasion where Mr. Rucks has requested a financial statement from our client, such request is immaterial. The lease, which you apparently consider as still effective, places the responsibility for the decision to reconstruct the premises and the financing of such reconstruction solely upon your shoulders. The lease does not contain any requirement that we assist you in the decision to reconstruct or in financing any construction you may decide to undertake. Our client does not wish to be involved in this decision. Furthermore, our client deems the furnishing of its financial information to you neither required under the 'lease' nor appropriate.

We have never advised you or Mr. Rucks that our client would pay any amount to compromise any potential future problems regarding the termination of the lease. We simply have indicated that we might recommend the possibility to our client.

However, since the lease has now terminated due to your unwarranted delay in commencing reconstruction, we see no reason to recommend that our client pay you any amount in settlement of any potential future claims.

Your suggestion that our client 'place funds in escrow as security for the lease' so you can complete the tentative loan commitment which you have finally secured is so completely outside the scope of any conceivable obligation our client may ever have had under the lease that we will not comment further on it, except to advise that our client must politely refuse.

In short, Mr. Miller, if you as a Trustee desire to build a building in reliance upon a lease which the lessee—in good faith—contends has terminated, realizing that after having incurred the cost and expense of such construction, you will still be faced with protracted and expensive litigation to determine whether a lease exists, then by all means you should do so. However, you should now be aware that our client contends the lease has terminated by reason of an unreasonable delay of three months with no new construction evident.

While our client has not nor will attempt to hinder you in any decision you may ultimately make, our client certainly is not obligated to, nor will it assist you financially in any rebuilding program which you, and you alone, may decide to undertake.

Yours very truly,
MOSTELLER, ANDREWS & MOSBURG
/s/ Theodore M. Elam
Theodore M. Elam

TME:mlw"

performed, a reasonable time is allowed. * * * " .

In the case of Woods, et al. v. Davis, et al., 155 Okl. 6, 7 P.2d 905, the Court had under consideration a contract which provided that a lessee may occupy certain property as long as desired at a certain rental. In passing upon this contract, the Court, at page 907 of the Pacific Reporter, said:

"In the construction of a contract a reasonable time is given for the performance of an act where the time for performance thereof is not fixed by the terms of the contract" (quoting Section 5060, C.O.S. 1921, being the same as 15 O.S. Sec. 173).

* * * * *

The Court further said in this case:

"The Trial Court correctly construed the provision of the contract to mean a lease for 'a reasonable time' and by its instructions left to the jury the determination of 'what constitutes a reasonable length of time' to be determined 'from all the facts and circumstances and the evidence in this case, and from your own knowledge and experience.' "

The Woods case was tried to the jury. In the case at bar the jury was waived and the case tried to the Court. So it goes without saying that the Court was the trier of the facts and should from all the facts and circumstances in the case determine what was or was not a reasonable time under the circumstances.

In the case under consideration here and by Section V, supra, of the lease agreement between the parties, the lease in question absolutely ceased upon the building being totally destroyed by fire. So upon the total destruction by fire, which is admitted by the parties, the lease came to an end, and at this point the landlord, plaintiffs in this case, at their sole discretion, had the option then to rebuild the premises and make the same tenantable within the meaning of the lease agreement. This was an option which the plaintiffs could exercise or not, in their discretion. No time having been fixed in the contract within which

the lessor was to exercise this right, the Oklahoma Statute prescribes a reasonable time for exercising the right, and this seems to be the general rule throughout the United States. So the question here is: Did the landlord after the destruction of the building by fire, exercise its option to rebuild within a reasonable time?

The Court finds that there has never been exercised by the plaintiffs the option to rebuild; the Court finds that plaintiffs did not elect to rebuild within a reasonable time, and thereby released the defendant of its obligations under the lease.

As a matter of fact, the plaintiffs in this case were financially unable to rebuild the premises destroyed by fire. In the letter, note 1, from plaintiffs to Rosenfield Jewelry Company dated February 25, 1965, it is said:

"If it is not agreeable to you to pay us $75,000, then we believe that you should furnish a financial statement or place funds in escrow as security for the lease so that we can complete the tentative loan commitment which we have now secured."

The quoted portion of the letter above clearly indicates that the plaintiffs were not in a financial position to rebuild the premises and called upon the defendant to furnish a financial statement or to place funds in escrow as security for the lease so that plaintiffs could then complete a purported loan commitment. Obviously from the contract there was no obligation upon the defendant to furnish a financial statement, nor was there an obligation to place funds in escrow as security for the lease.

Further, in the same letter above referred to, the plaintiffs state as follows:

"In this connection, it has been indicated through Mr. Mosteller that your financial structure was such that it might be that you would be able to finance the operation on Main Street no more than two or possibly three years. This intimation did not seriously disturb us because we could not

believe that a parent corporation such as yours would permit its reputation to be sullied by the bankruptcy of one of its subsidiaries."

The plaintiffs stated, as above last quoted, that they were not seriously disturbed about the defendant's ability to continue and pay the rent called for in the lease.

It is quite evident that the plaintiffs had no intention to rebuild the building unless they received financial assistance from the defendant by way of financial statements or the placing of funds in escrow as security for the lease. There are no requirements in the lease requiring the defendant to furnish such assistance. The Court further is of the opinion and finds that without such assistance from the defendant, plaintiffs were not financially able to rebuild the destroyed structure.

Based upon all of the evidence in this case, the Court concludes that the plaintiffs must fail, and that Judgment should, and will accordingly be entered, in favor of the defendant.